William J. LEHRFELD, Appellant,

v.

Margaret M. RICHARDSON, Commissioner of Internal Revenue, et al., Appellees.

No. 97–5010.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 24, 1997.

Decided Jan. 20, 1998.

Bruce L. Stern argued the cause for appellant, with whom Amber H.C. Wong and William J. Lehrfeld were on the briefs.

Thomas J. Sawyer, Attorney, U.S. Department of Justice, argued the cause for appellees, with whom Mary Lou Leary, U.S. Attorney, Loretta C. Argrett, Assistant Attorney General, U.S. Department of Justice, and Jonathan S. Cohen, Attorney, were on the brief.

Before: GINSBURG, ROGERS, and TATEL, Circuit Judges.

GINSBURG, Circuit Judge:

The appellant William Lehrfeld asked the Internal Revenue Service for access to documents the IRS had received from Members of Congress or other officials in support of the application of the South Africa Free Elections Fund for tax-exempt status. When the IRS refused that request, Lehrfeld sued to compel disclosure. The district court granted summary judgment for the IRS on the ground that the material sought was "return information" protected from disclosure under § 6103 of the Internal Revenue Code and not subject to disclosure under § 6104. We affirm.

I. BACKGROUND

As a general rule, the IRS may not disclose tax returns and return information to the public. I.R.C. § 6103(a). The Congress has defined "return information" broadly to include any data

received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

I.R.C. § 6103(b)(2)(A). The Congress has also provided a limited exception to the general rule of confidentiality with respect to applications for tax-exempt status:

If an organization described in section 501(c) or (d) is exempt from taxation under section 501(a) for any taxable year, the application filed by the organization with respect to which the Secretary made his determination that such organization was entitled to exemption under section 501(a), together with *any papers submitted in support of such application,* and any letter or other document issued by the Internal Revenue Service with respect to such application shall be open to public inspection.

I.R.C. § 6104(a)(1)(A) (emphasis added). The Treasury regulation interpreting this section takes the words "any papers submitted in support of such application" to mean "any statement or document ... that is submitted by an organization in support of its application." 26 C.F.R. § 301.6104(a)–1(e). In other words, papers submitted by anyone other than the applicant itself in support of its application for tax-exempt status need not be disclosed.

A person seeking information from the IRS may rely not only upon § 6104 but also upon the Freedom of Information Act, which generally requires that an agency release records in response to a request that "reasonably describes such records" and "is made in accordance with published rules stating the ... procedures to be followed." 5 U.S.C. § 552(a)(3). Of the enumerated exceptions to that general rule of disclosure, only Exemption 3 is relevant here: an agency need not disclose records

specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such manner as to leave no discretion on the issue, or (B) establishes

particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

William Lehrfeld, an attorney specializing in the area of tax-exempt organizations, read in the trade publication *Tax Notes* that the South Africa Free Elections Fund (SAFE) had been granted tax-exempt status under § 501(c)(3) of the Code. Lehrfeld believed that SAFE's voter registration and education efforts in South Africa, which were expected to benefit Nelson Mandela's African National Congress party, might run afoul of that provision of § 501(c)(3) which prohibits charitable organizations from participating or intervening in a political campaign on behalf of any candidate. He also wondered whether prominent U.S. politicians had used their influence to speed up the processing of SAFE's application, which appeared to have received expedited treatment.

In September 1993 Bruce Stern, an attorney employed in Lehrfeld's office, submitted IRS Form 4506–A, "Request for Public Inspection or Copy of Exempt Organization Tax Form," together with a letter requesting "a copy of the [SAFE] Fund's exemption application and all other documents available to the public under IRC 6104." Stern did not mention the FOIA in his request. The IRS promptly released certain documents responsive to Stern's request.

Believing that not all relevant documents had been disclosed, Lehrfeld instructed Stern to file another request. In his second request Stern again cited § 6104 as authority and again made no mention of the FOIA, but this time he did ask for a *"Vaughn* index" describing any documents that the IRS refused to disclose. See *Vaughn v. Rosen,* 484 F.2d 820, 827–28 (D.C.Cir.1973) (outlining requirements agency must meet in indexing documents for which it claims an exemption from disclosure under the FOIA). The IRS responded in December 1993 by releasing some previously withheld documents and explaining that the balance of the requested documents—which later turned out mainly to be internal IRS memoranda and routing slips—fell outside the scope of § 6104 and therefore could not be disclosed because of

§ 6103. The IRS declined, however, to produce an index of the withheld documents: "The [IRC] neither provides you access to an index of denied documents," wrote the IRS, "nor a right to appeal our determination."

In responding to Stern's requests, an IRS tax law specialist removed from SAFE's administrative file materials that he had determined to be outside the scope of the disclosure mandated by § 6104 and delivered the remaining materials to the IRS reading room. The specialist did not search the 535 files in which the IRS stores correspondence from Members of Congress.

In February 1994 Lehrfeld sought an injunction requiring the IRS to disclose the documents still being withheld, this time expressly invoking the FOIA in addition to § 6104. The district court granted the IRS's motion for summary judgment on the ground that the documents Lehrfeld sought were not subject to disclosure under either § 6104 or the FOIA and that the IRS's failure to search other files for documents submitted by third parties was reasonable because those documents were not subject to disclosure.

## II. ANALYSIS

On appeal Lehrfeld seeks access to all papers the IRS received from third parties in support of SAFE's application and to all documents the IRS itself created in the course of considering SAFE's application. Lehrfeld argues that the Treasury regulation that limits disclosure under § 6104 to papers submitted by the organization applying for tax-exempt status is invalid under steps one and two of the analysis in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Even if we were to agree with Lehrfeld on that score, however, and thus to read § 6104 broadly to reach congressional correspondence and other papers submitted by third parties, § 6104 would still provide no basis for disclosing the documents internal to the IRS. In order to reach those documents, Lehrfeld needs the FOIA.

Lehrfeld recognizes that the IRS may not disclose "return information" in response to a FOIA request because § 6103 specifically exempts such information from disclosure. He argues, however, that neither the third-party submissions nor the internal IRS documents he seeks are "return information" within the meaning of § 6103. The IRS maintains that these documents are return information and asserts that, in any event, we should not reach the merits of Lehrfeld's FOIA claim because he never made a proper FOIA request and failed to exhaust his administrative remedies. We review the district court's grant of summary judgment *de novo*. *See, e.g., DeGraff v. District of Columbia,* 120 F.3d 298, 301 (D.C.Cir.1997).

### A. Disclosure Pursuant to § 6104.

■ As noted above, the Secretary of the Treasury has by regulation interpreted § 6104 as requiring disclosure only of documents submitted by the organization seeking tax-exempt status, which leaves out papers submitted by Members of Congress or other third parties. *See* 26 C.F.R. § 301.6104(a)–1(e). In order to ascertain the validity of the regulation, we apply the familiar two-step test of *Chevron*: if the Congress has "directly spoken to the precise question at issue," then the court "must give effect to the unambiguously expressed intent of Congress"; otherwise the court will defer to the administering agency's interpretation if it is reasonable in light of the structure and purpose of the statute. 467 U.S. at 842–43, 104 S.Ct. at 2781–82.

The statute at issue here requires disclosure of "the application filed by the organization ... together with any papers submitted in support of such application." I.R.C. § 6104(a)(1)(A). Lehrfeld insists that "any papers" means "all papers," but in doing so he misses the point of the Government's argument that the statute is ambiguous. We may assume that he is correct and still not have an answer to the relevant question—all papers submitted by whom? The passive voice of the statute certainly gives no answer. The Congress might well have meant "[all] papers submitted by the organization," thinking it redundant to say "by the organization" twice in the same sentence. At any rate the Congress did not unambiguously say "all pa-

pers, regardless of by whom submitted." And in the absence of an unambiguous expression of congressional intent, Lehrfeld must rest his hopes upon the second step of the *Chevron* analysis.

At the second step, the IRS defends the regulation as a reasonable interpretation of § 6104. As the IRS observes, the regulation harmonizes well with § 6104(a)(1)(D), which provides as follows:

Upon the request of the organization submitting any supporting papers described in subparagraph (A) or (B), the Secretary shall withhold from public inspection any information contained therein which he determines relates to any trade secret, patent, process, style of work, or apparatus, of the organization, if he determines that public disclosure of such information would adversely affect the organization.

The reference in that sentence to "the organization submitting any supporting papers described in subparagraph (A)" is consistent with the position taken in the regulation that subparagraph (A) refers only to papers submitted by the organization seeking tax-exempt status. If papers submitted by third parties were subject to disclosure pursuant to subparagraph (A), then we would surely expect § 6104(a)(1)(D) to protect proprietary information not only "[u]pon the request of the organization" seeking tax-exempt status but "upon the request of any party submitting supporting papers." That the protection for valuable information in subparagraph (D) apparently extends only to submissions made by the applicant suggests that the norm of disclosure in subparagraph (A) is likewise limited to submissions made by the applicant; this is the rare case in which it truly may be said that the exception proves (i.e., tests) the rule.

Moving beyond the structure of § 6104, the IRS also finds strong support for the regulation in the legislative history of § 6104. The regulation captures the intent of the drafters as revealed in identical terms in the House and Senate reports on § 6104(a):

If an organization described in section 501(c) or (d) is exempt from taxation for any taxable year, the application filed by the organization ... and any papers *sub-mitted by the organization* in support of that application, are to be open to public inspection at the national office of the Internal Revenue Service.

H.R.Rep. No. 85–775, at 99 (1957) and S.Rep. No. 85–1983, at 231 (1958) (emphasis added).

We conclude that 26 C.F.R. § 301.6104(a)–1(e) is a permissible construction of § 6104(a)(1)(A). Therefore, the IRS had no obligation under that statute to disclose materials submitted by third parties in support of SAFE's application.

## B. Disclosure Pursuant to the FOIA.

 The IRS contends that Lehrfeld never made a proper FOIA request: IRS regulations require that a FOIA request state that it is being made pursuant to the FOIA, *see* 26 C.F.R. § 601.702(c)(3)(ii), whereas Lehrfeld's requests specifically invoked § 6104 but did not mention the FOIA. Lehrfeld counters that his request for a "*Vaughn* index," together with his asking for materials outside the scope of § 6104, was enough to put the IRS on notice that he was making a FOIA request. Rather than decide whether reference to a *Vaughn* index in a request for information suffices to put the agency on notice that the request is being made pursuant to the FOIA, we may assume for the purpose of this opinion that Lehrfeld filed a proper FOIA request. That assumption matters not because the IRS has already disclosed all the documents to which Lehrfeld is entitled.

In its letter of December 2, 1993, the IRS took the position, to which it has consistently adhered, that "the balance of the documents [he requested] are beyond the scope of the provisions of Internal Revenue Code section 6104" and that "to the extent they exist" such documents "are protected from disclosure by Code section 6103." And, as the IRS points out, documents protected under § 6103 are exempt from disclosure under the FOIA as materials "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3). *See Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C.Cir.1997) ("That § 6103 is the sort of nondisclosure statute contemplated by FOIA exemption 3 is beyond dispute"). That being

the case, it would be futile to require Lehrfeld to file a new request expressly invoking the FOIA; the IRS has adopted a legal position under which it can only deny such a reformulated request.

We apply the two-step analysis of *Chevron* to the IRS's interpretation of § 6103 just as we did to the Treasury regulation interpreting § 6104. As we recently said in *Tax Analysts v. IRS*:

> The IRS and the Office of Chief Counsel [for the IRS within the Department of the Treasury] are the gatekeepers of federal tax information. Through § 6103, Congress charged these two agencies and their employees with the duty of protecting return information from disclosure to others within the federal government, and to the public at large. If the IRS adopts an interpretation of § 6103, therefore, *Chevron* is triggered.

117 F.3d at 613. The IRS has determined that documents it either receives or creates during the initial investigation of an organization seeking tax-exempt status constitute "return information" within the meaning of § 6103 and are therefore not subject to disclosure. Because the Congress has not "directly spoken to the precise question at issue," we defer to this reasonable interpretation of the statute.

Recall that § 6103(b)(2)(A) prohibits disclosure of data the IRS receives "with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under [the IRC]." Lehrfeld asserts that the materials he seeks are not "return information" within the meaning of § 6103 because IRS review of an application for tax-exempt status "is to determine whether the applicant satisfies the statutory criteria for exemption under IRC 501(c)(3) ... and is in no way an attempt by the Service to determine the existence, or possible existence, of the applicant's income tax liability."

We find no significance in the distinction Lehrfeld would have us draw between, on the one hand, an analysis of "whether the applicant satisfies the statutory criteria for exemption" and, on the other, an analysis of "the applicant's income tax liability." Sec-

tion 501(a) plainly states that "[a]n organization described in subsection (c) ... shall be exempt from taxation." Therefore, to determine whether an applicant meets the statutory criteria of § 501(c) is, as a practical matter, to determine whether the applicant has any income tax liability. It follows that an application for tax-exempt status and any documents related to it are received "with respect to the determination of the existence, or possible existence, of liability," and as such—an exception such as § 6104 apart—the IRS may not disclose them.

### III. CONCLUSION

With regard to Lehrfeld's claim under § 6104, we hold that the Treasury regulation limiting disclosure to materials submitted by the applicant is a reasonable elaboration of a point upon which the Congress was silent. With regard to Lehrfeld's FOIA claim, we hold that the IRS reasonably determined that Lehrfeld sought "return information" the disclosure of which is prohibited by § 6103. It follows that the IRS has already disclosed all the documents to which Lehrfeld is entitled. Accordingly, the judgment of the district court is

*Affirmed.*