**TAX ANALYSTS, Appellant,**

v.

**INTERNAL REVENUE SERVICE and
Christian Broadcast Network, Inc.,
Appellees.**

**No. 99–5284.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 20, 2000.

Decided June 13, 2000.

William A. Dobrovir argued the cause and filed the briefs for appellant.

Jonathan S. Cohen, Attorney, U.S. Department of Justice, argued the cause for appellee Internal Revenue Service. With him on the brief were Teresa T. Milton, Attorney, and Wilma A. Lewis, United States Attorney.

J. William Koegel, Jr. argued the cause for appellee Christian Broadcast Network, Inc. With him on the brief was Bruce C. Bishop.

Before: SENTELLE, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Tax Analysts, a publisher of tax material, sued the Internal Revenue Service (IRS) and the Christian Broadcasting Network (CBN) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1994), and Internal Revenue Code (I.R.C.) § 6104, 26 U.S.C. § 6104 (1994), respectively, in an effort to obtain copies of a closing agreement reached between the IRS and CBN in conjunction with CBN's filing for tax exempt status under I.R.C. § 501(a) and (c)(3), 26 U.S.C. § 501(a), (c)(3) (1994). The IRS filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and CBN filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted both motions. Tax Analysts appealed. While we affirm the district court's dismissal of the action against CBN, we find the present record inadequate to resolve Tax Analysts' claim against the IRS, and remand for further proceedings.

A.

CBN has been an organization exempt from taxation under I.R.C. § 501(a) and (c)(3) since 1961. In 1985 and 1986, CBN allegedly engaged in political activities inconsistent with its status as a tax exempt organization, prompting the IRS to audit CBN and to examine CBN's continued eligibility for tax exempt status.

On February 2, 1998, CBN filed with the IRS a Form 1023 Application for Exempt Status. On March 13, 1998, the IRS granted CBN's application retroactive to April 1, 1987. On March 16, CBN issued a press release announcing that it had entered into an agreement with the IRS to conclude an audit and to preserve its exempt status. Specifically, the press release indicated that the agreement entailed the loss of CBN's tax exemption for 1986 and 1987, the relinquishment of exempt status for three CBN affiliates, a "significant payment" by CBN to the IRS, and various other promises and modifications to CBN operations.

On April 6, 1998, Tax Analysts sent a FOIA request to the IRS seeking a copy of the agreement between the IRS and CBN referred to in the press release; any closing agreement relating to the issues described in the press release; any written correspondence or memoranda of meetings or conversations between the IRS and CBN pertaining to those agreements or the press release; and any renewal, revocation, or modification of any ruling granting tax exempt status to CBN. A few months later, on June 29, 1998, the IRS responded and, citing FOIA Exemption 3, 5 U.S.C. § 552(b)(3), and I.R.C. § 6103, declined to disclose any of the requested information except the Form 1023 filed on February 2, 1998, and the March 13, 1998 determination letter from the IRS to CBN granting exempt status.

On July 20, 1998, Tax Analysts sent a letter to CBN seeking the same information as requested from the IRS, citing I.R.C. § 6104 as the basis for its request. Like the IRS, CBN declined to make available any documents other than the Form 1023 and letter from the IRS granting exempt status. Shortly thereafter, Tax Analysts filed this action against the IRS and CBN seeking access to the requested records.

■ As a general matter, FOIA provides for the disclosure upon request of government-held records and documents. *See* 5 U.S.C. § 552. FOIA's general disclosure rule is subject to nine statutory exceptions, however. *See id.* § 552(b). The government bears the burden of proving that any requested documents it withholds fall within one of the nine exceptions. *See id.* § 552(a)(4)(B); *Petroleum Info.*

*Corp. v. United States Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C.Cir.1992).

The exemption asserted by the IRS in this case, "Exemption 3," permits the withholding of government records "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. . . ." 5 U.S.C. § 552(b)(3). The I.R.C. explicitly provides for the confidentiality of tax returns and "return information." I.R.C. § 6103(a), 26 U.S.C. § 6103(a). This court and others have recognized consistently that I.R.C. § 6103(a) is a nondisclosure statute falling within the scope of FOIA Exemption 3. *See, e.g., Church of Scientology v. IRS*, 484 U.S. 9, 11, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987); *Lehrfeld v. Richardson*, 132 F.3d 1463, 1466 (D.C.Cir.1998); *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C.Cir.1997); *Aronson v. IRS*, 973 F.2d 962, 964 (1st Cir.1992).

■ I.R.C. § 6104(a)(1)(A), cited by Tax Analysts in its request to CBN, provides for the disclosure of certain documents relating to organizations exempt from tax under I.R.C. § 501(c)(3), like CBN:

> If an organization described in section 501(c) or (d) is exempt from taxation under section 501(a) for any taxable year, the application filed by the organization with respect to which the Secretary made his determination that such organization was entitled to exemption under section 501(a), together with any papers submitted in support of such application, and any letter or other document issued by the Internal Revenue Service with respect to such application shall be open to public inspection at the national office of the Internal Revenue Service.

26 U.S.C. § 6104(a)(1)(A).[1] I.R.C. § 6104 also requires an exempt organization to make available for public inspection a copy of its application for exemption, "together with a copy of any papers submitted in support of such application and any letter or other document issued by the Internal Revenue Service with respect to such application." 26 U.S.C. § 6104(e)(2)(A)(ii) (Supp. III 1997).[2] We recognized in

---

**1.** All editions of the United States Code since 1970 have actually read "any paper" instead of "any papers" as we set forth above. *See* 26 U.S.C. § 6104 (1970); *see also* United States Code editions of 1976, 1982, 1988, and 1994. However, the original language "any papers" was inserted into § 6104 in 1958, *see* Technical Amendments Act of 1958, Pub.L. No. 85–866, § 75(a), 72 Stat. 1606, 1660–61 (1958), and appeared in the 1958 and 1964 editions of the United States Code. The United States Statutes at Large are "legal evidence" of the law, 1 U.S.C. § 112 (1994), whereas the titles of the United States Code only serve as "prima facie" evidence of the law unless they are enacted as "positive law," in which case they too serve as legal evidence of the laws. 1 U.S.C. § 204(a) (1994); *see also Stephan v. United States*, 319 U.S. 423, 426, 63 S.Ct. 1135, 87 L.Ed. 1490 (1943) (per curiam) (Statutes at Large prevail over prima facie portions of U.S.C.). The I.R.C. has been enacted as a separate code and is therefore positive law. *See* Internal Revenue Code of 1954, ch. 736, 68A Stat. 1 (1954). Though both the Statutes at Large and I.R.C. could be said to be authoritative here, we use the "any papers" language of the original enactment appearing in the Statutes at Large. The difference is irrelevant to the outcome of the case, and we will thus disregard an apparent scrivener's error made by a codifier without congressional direction. *Cf. United States v. Welden*, 377 U.S. 95, 98 n. 4, 84 S.Ct. 1082, 12 L.Ed.2d 152 (1964) (holding that a "change of arrangement" by a codifier to a section not enacted as positive law "should be given no weight").

**2.** Legislation enacted in 1998 amended § 6104, repealing former subsections (d) and (e) and inserting a new subsection (d) that includes the public inspection requirement of former § 6104(e). *See* Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub.L. No. 105–277, § 1004(b), 112 Stat. 2681, 2681–888 to 2681–889 (1998) (codified at 26 U.S.C.A. § 6104 (West Supp. 1999)). Although the amendment altered the statutory language slightly, those changes are not relevant to the issue before us. Accordingly, we need not and do not address those differences here.

*Lehrfeld* that documents disclosable under I.R.C. § 6104 may contain material that otherwise constitutes "return information" protected from disclosure by I.R.C. § 6103. *Lehrfeld,* 132 F.3d at 1467. I.R.C. § 6104 therefore may be characterized as an exception to the exception from the general disclosure rule offered by FOIA Exemption 3 and I.R.C. § 6103. The parties in this case agree that § 6104, where it applies, controls § 6103; and we will assume as much for the purpose of this case.

The IRS has declined throughout this litigation to disclose whether a closing agreement with CBN exists, and the district court did not examine the documents in question before dismissing the complaint. Instead, the court concluded from the pleadings that the information requested by Tax Analysts represents a closing agreement as defined by I.R.C. § 7121(a), 26 U.S.C. § 7121(a) (1994), and therefore constitutes tax return information that as a matter of law is outside the scope of I.R.C. § 6104 and exempt from disclosure under FOIA Exemption 3 and I.R.C. § 6103. Accordingly, the district court granted judgment on the pleadings as a matter of law pursuant to Federal Rule of Civil Procedure 12(c) in favor of the IRS.

With respect to the claim against CBN, the district court also concluded that I.R.C. § 6104 does not contemplate a private right of action to enforce the obligation of an applicant for tax exempt status to make its application papers available to the public. Accordingly, the district court dismissed the action against CBN for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Tax Analysts appeals both the judgment and dismissal.

### B.

▮ We first consider whether the information requested by Tax Analysts falls within the scope of I.R.C. § 6104(a)(1)(A), and thus must be disclosed despite FOIA Exemption 3 and I.R.C. § 6103. As noted above, I.R.C. § 6104(a)(1)(A) specifically requires disclosure of the application for exempt status, "any papers submitted in support of such application," and "any letter or other document issued by the [IRS] with respect to such application." Statutory phrases like "any papers" and "any letter or other document" suggest breadth within those delineated categories of disclosable information. Regulations promulgated by the Department of the Treasury reinforce this suggestion by providing both a list of application materials, *see* Treas. Reg. § 301.6104(a)–1(d)(2), 26 C.F.R. § 301.6104(a)–1(d)(2) (1999), and a catchall provision stating that "any statement or document not described in paragraph (d) of this section that is submitted by an organization in support of its application." Treas. Reg. § 301.6104(a)–1(e). The catch-all provision further offers a legal brief as an example of a disclosable document. *See id.* Despite the breadth of I.R.C. § 6104(a)(1)(A) and related regulations, however, it is also clear from the statute that not every document pertaining to an exempt organization that the IRS has on file falls within the provision's scope. *See, e.g., Lehrfeld,* 132 F.3d at 1465–66 (concluding that I.R.C. § 6104(a)(1)(A) does not cover papers submitted by third parties because such documents are neither submitted by the applicant nor issued by the IRS).

Beyond the obvious examples of the exemption application itself and the final determination letter issued by the IRS, the statute does not articulate exactly what constitutes a document that "supports" an exemption application or is "issued ... with respect to" an exemption application. Tax Analysts argues that an applicant might submit a closing agreement as a supporting document for an exemption application, and that both the closing agreement and documents generated in the process of negotiating the closing agreement might also be submitted by the applicant in support of or issued by the IRS con-

cerning that application. Also, Tax Analysts asserts that the IRS may possess legal briefs, letters, memoranda, and other papers submitted by CBN's attorneys, accountants, officers, or directors presenting arguments in favor of CBN's exempt status or explaining or excusing CBN's political activities. Accordingly, Tax Analysts maintains that the district court erred in concluding that there was no set of facts under which Tax Analysts could state a cause of action under FOIA.

The IRS, on the other hand, while not acknowledging whether the sought documents exist, takes the position that a closing agreement and its documentary precursors, by their very nature and regardless of their content, are return information protected by FOIA Exemption 3 and I.R.C. § 6103, beyond the scope of I.R.C. § 6104(a)(1)(A). The IRS points to the list of application materials in Treas. Reg. § 301.6104(a)–1(d)(2), which includes particular types of documents and statements like the applicant's articles of incorporation and bylaws, financial statements, and organizational charts, but does not mention closing agreements. *See* Treas. Reg. § 301.6104(a)–1(d)(2).

If IRS forms and regulations require the filing of particular types of documents as part of an application for exemption, then clearly such documents are submitted in support of the application regardless of their content. The converse, that other types of documents cannot be included in the statutory phrase "submitted in support of such application," does not necessarily follow. While I.R.C. § 6104(a)(1) explicitly requires disclosure of applications for exempt status and letters, the descriptions that define which documents and letters are disclosable—"in support of such application," and "with respect to such application"—speak to content without limitation as to type of document. Also, the catch-all provision of Treas. Reg. § 301.6104(a)–1(e), by its express inclusion of other documents, denies the notion that the prescribed list represents the outer bounds of

disclosability. We note further that I.R.C. § 6103(b)(2), in defining "return information," similarly uses descriptions of content rather than titles and labels to articulate which taxpayer records should be held confidential.

The IRS has never denied that an applicant might submit a particular document both to negotiate a closing agreement and to support an exemption application where the two processes share overlapping issues. Moreover, at oral argument, the IRS conceded that a closing agreement which would generally in its view be exempt from disclosure as return information nevertheless might become disclosable if submitted in support of an exemption application. Precluding disclosure of a closing agreement, without regard to its content or circumstances, merely because it carries that particular label is therefore inconsistent with the statutory inclusion of "*any* papers submitted" and "*any* letter or document issued." Particularly in this case, where the press release suggests that the closing agreement and application for exempt status were part of a single, overall negotiation between the IRS and CBN, the IRS's rigid reliance on the type of documents at issue rather than their content is questionable.

In arguing against remand for further discovery, the IRS relies heavily upon another case involving closing agreements, *Tax Analysts v. IRS*, 53 F.Supp.2d 449 (D.D.C.1999). In that case, the district court granted summary judgment for the IRS on the ground that the closing agreements were not disclosable under I.R.C. § 6104(a)(1)(A) because they were not " 'issued' by the IRS," but were instead bilateral contracts between the IRS and the applicants in question. *Id.* at 453. Without endorsing this view of the meaning of "issued by the IRS," we note that the district court in that case conducted an *in camera* review of the agreements in question before concluding that they did not fall within the scope of I.R.C. § 6104(a)(1)(A). That court based its deci-

sion principally upon "the character of the closing agreements themselves," *id.* at 453 n. 6, explicitly leaving open the question of whether a closing agreement might itself constitute an application for exempt status disclosable under I.R.C. § 6104(a)(1)(A). *See id.* at 453 n. 7. In other words, far from supporting the IRS's argument that further discovery would be fruitless, that case better supports the conclusion that some review of the content of the documents in question is necessary before the court can adequately determine whether or not I.R.C. § 6104(a)(1)(A) applies.

At bottom, the case before us does not present a disagreement over the law to be applied, but the narrow and fact-specific question of whether the closing agreement between the IRS and CBN and any accompanying documentation represent material disclosable under I.R.C. § 6104(a)(1)(A), despite their apparent status as material exempt from disclosure under I.R.C. § 6103. As the present record is inadequate for such determination, further discovery is necessary. We therefore vacate the district court's judgment in favor of the IRS and remand for further proceedings consistent with this opinion. We leave to the district court in the first instance the question of whether *in camera* examination or the filing of a *Vaughn* index is sufficient to create an adequate record upon which to base the disclosability determination.

### C.

■ We turn next to Tax Analysts' claim against CBN. The district court dismissed that claim after concluding that I.R.C. § 6104 does not contemplate a private right of action to enforce the public inspection requirement imposed upon applicants for tax exempt status. I.R.C. § 6104 does not expressly provide for private action against exempt organizations that fail to make available their exemption applications and supporting documentation. Indeed, the provision offers no language at all concerning remedies for its violation. Tax Analysts argues that this omission does not preclude its cause of action against CBN for allegedly violating that statute's public inspection requirement, and that Congress intended a private remedy to effectuate the public inspection requirement. CBN, unsurprisingly, maintains that I.R.C. § 6104 does not support an implied private right of action.

■ Although violation of a federal statute alone is inadequate to support a private cause of action, *see, e.g., Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)), the Supreme Court has repeatedly recognized that, in some cases, the courts may infer such a remedy from the language or structure of a statute or the circumstances of its enactment. *See, e.g., Karahalios v. National Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527, 532–33, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). The question we must resolve is whether Congress intended to provide a private remedy for violations of the public inspection requirement of I.R.C. § 6104. *See, e.g., Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988); *Transamerica,* 444 U.S. at 15, 100 S.Ct. 242.

To answer that question, we turn to the long line of cases stemming from *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *Cort,* the Supreme Court articulated four factors for the courts to weigh in discerning congressional intent to provide an implied private right of action: (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether some indication exists of legislative intent, explicit or implicit, either to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purposes of the legislative scheme; and (4) whether

the cause of action is one traditionally relegated to state law, such that it would be inappropriate for the court to infer a cause of action based solely on federal law. *See id.* at 78, 95 S.Ct. 2080; *see also Suter v. Artist M,* 503 U.S. 347, 364 n. 16, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) (recognizing the four *Cort* factors); *Thompson,* 484 U.S. at 179, 108 S.Ct. 513 (expressing reliance upon the *Cort* factors). Over the years, the proper application and continued vitality of *Cort's* four factors have been matters of great debate, as reflected in the parties' arguments. Tax Analysts contends that we should mechanically consider and weigh each of the four factors, and cites numerous Supreme Court cases as supporting its position. CBN maintains, conversely, that the Supreme Court has discarded step-by-step evaluation of the *Cort* factors, and cites as many cases sustaining its view.

Turning to our own jurisprudence in this area, in *Government of Guam v. American President Lines,* 28 F.3d 142 (D.C.Cir. 1994), we reviewed *Cort* and its progeny and concluded that, in assessing whether Congress intended an expressly provided remedy to be the only remedy, "the central analysis is directed at discovering legislative intent by means of 'the language of the statute, the statutory structure, or some other source.'" *Id.* at 145 (quoting *Karahalios,* 489 U.S. at 532–33, 109 S.Ct. 1282). We also acknowledged that, where Congress has otherwise enacted "a comprehensive legislative scheme including an integrated system of procedures for enforcement," there is a strong presumption that Congress deliberately did not create a private cause of action. *Id.* at 145–46, 109 S.Ct. 1282 (quoting *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)).

Although I.R.C. § 6104 does not articulate a remedy for its violation, elsewhere in the tax code, Congress provided an enforcement mechanism of IRS-imposed civil fines and penalties for § 6104. *See* I.R.C. § 6652(c)(1)(C)-(D). Additionally, current IRS regulations offer the public a mechanism for complaining to the IRS about an exempt organization's failure to comply with § 6104. *See* 26 C.F.R. § 301.6104(d)–1(g). Although these regulations did not take effect until after Tax Analysts filed suit, we note that the IRS has long accepted information from third parties regarding taxpayers' failure to comply with the tax laws, even in the absence of a specific regulatory mechanism for doing so. If ever a case demonstrated a "comprehensive legislative scheme including an integrated system of procedures for enforcement," *Government of Guam,* 28 F.3d at 145–46, it would be this one.

Moreover, we note that the exempt organization is not the only source from which an interested party can obtain copies of the organization's exemption application and supporting documents. As Tax Analysts' claim against the IRS amply demonstrates, I.R.C. § 6104 permits interested parties to gain access to the same documents from the IRS. Additionally, we note that I.R.C. § 6104(e) does not require an exempt organization to release for public inspection any document that the public could not otherwise procure from the IRS. In other words, Tax Analysts achieves nothing through a private right of action against CBN that cannot be obtained from the government in the alternative.

Our analysis comports with that of the only other courts to consider whether I.R.C. § 6104 creates an implied private remedy. *See Schuloff v. Queens College Found., Inc.,* 994 F.Supp. 425, 427–28 (E.D.N.Y.1998), *aff'd,* 165 F.3d 183 (2d Cir. 1999). For all of these reasons, we conclude that I.R.C. § 6104 does not provide a private right of action, and affirm the district court's dismissal of Tax Analysts' claim against CBN.

### Conclusion

In summary, because we find the present record inadequate to determine whether the closing agreement between the IRS and CBN and any accompanying documen-

tation are disclosable under I.R.C. § 6104(a)(1)(A), we vacate the judgment in favor of the IRS on Tax Analysts' FOIA claim and remand for further proceedings, leaving to the district court the question of how best to create an adequate record. We hold, however, that § 6104 does not provide Tax Analysts with a private right of action against CBN, and affirm the district court's dismissal of that claim.