# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 10, 2005          Decided June 7, 2005

No. 04-5304

TAX ANALYSTS,
APPELLANT

v.

INTERNAL REVENUE SERVICE AND
CHRISTIAN BROADCASTING NETWORK, INC.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 98cv02345)

---

*William A. Dobrovir* argued the cause for appellant. With him on the briefs was *Cornish F. Hitchcock*.

*Teresa T. Milton*, Attorney, U.S. Department of Justice, argued the cause for appellee Internal Revenue Service. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Jonathan S. Cohen*, Attorney.

*Bruce C. Bishop* and *J. William Koegel, Jr.* were on the brief for appellee Christian Broadcasting Network, Inc.

Before: GINSBURG, *Chief Judge*, and SENTELLE and HENDERSON, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: Tax Analysts ("TA"), a publisher of tax materials, sued the Internal Revenue Service ("IRS" or "the Service") and the Christian Broadcasting Network ("CBN") under the Freedom of Information Act ("FOIA") and the Internal Revenue Code in an effort to obtain copies of a closing agreement reached between the IRS and CBN in connection with CBN's filing for tax-exempt status. The District Court dismissed the action against both defendants. On appeal, in *Tax Analysts v. Internal Revenue Service*, 214 F.3d 179 (D.C. Cir. 2000), we affirmed the judgment of dismissal as to CBN, but remanded for further proceedings the claim against the IRS. In the remand order, we directed the provision of further discovery before entry of dispositive judgment. Following some discovery, which TA contends was inadequate, the District Court granted summary judgment in favor of the IRS. TA once again appeals, arguing that the IRS failed to meet its burden under FOIA, the Internal Revenue Code, Treasury regulations, and case law of this Circuit by showing that withheld documents were exempt from FOIA's disclosure requirements. For the reasons set forth below, we affirm the District Court's judgment.

## I. Background

### A. *The Underlying Controversy*

We detailed the facts underlying this controversy in disposing of the previous appeal of this case, *Tax Analysts v. Internal Revenue Service*, 214 F.3d 179, 181-83 (D.C. Cir. 2000) ("*Tax Analysts I*"). We incorporate that discussion by reference, and reiterate facts only as necessary for the purposes of resolving the matter now before us.

TA publishes tax materials. It sued the IRS and CBN under FOIA and the Internal Revenue Code (both discussed below) to obtain copies of a CBN-IRS closing agreement regarding taxes due for previous taxable years. The closing agreement was reached in the same time period during which CBN secured tax-exempt status going forward. In our previous opinion, this Court described the closing agreement as being reached "in conjunction" with CBN's tax-exemption filing.

CBN had been a tax-exempt 501(c)(3) organization since 1961. In 1985 and 1986, CBN allegedly engaged in political activities in support of presidential candidate and CBN founder Pat Robertson. The IRS audited CBN regarding CBN's past and continued eligibility for tax-exempt status.

CBN filed a Form 1023 Application for Exempt Status on February 2, 1998; the IRS granted the application on March 13, 1998, retroactive to April 1, 1987. On March 16, CBN issued a press release announcing that it had entered into an agreement with the IRS to conclude an audit and to preserve its exempt status; the press release announced both the closing agreement regarding previous taxable years and the Form 1023 regarding the period subsequent to those years.

On April 6, 1998, TA sent a FOIA request to the IRS seeking the following: a copy of the closing agreement mentioned in the press release; any closing agreement relating to the issues noted in the press release; any written correspondence or memoranda of conversations between CBN and the IRS pertaining to those agreements; and any renewal, revocation, or modification of any ruling granting tax-exempt status to CBN.

On June 29, 1998, the IRS responded. Citing FOIA Exemption 3, 5 U.S.C. § 552(b)(3), and I.R.C. § 6103, 26 U.S.C.

§ 6103, the Service declined to disclose any of the requested information except for the February 1998 Form 1023 filing and the March 1998 determination letter.  On July 20, 1998, TA sent a letter to CBN requesting the same information.  CBN, like the IRS, declined to produce any document except for the Form 1023 and the determination letter.  Shortly thereafter, TA filed this action against the IRS and CBN.

B.  *Statutory and Regulatory Framework*

The Freedom of Information Act sets forth a basic rule for disclosure of federal records, 5 U.S.C. § 552(a), but includes a number of exceptions, including an exception for documents specifically exempted by statute, commonly referred to as "FOIA Exemption 3."  *Id.* § 552(b)(3).  The Internal Revenue Code sets forth a basic rule regarding public disclosure of documents pertaining to application for tax-exempt status:

> [For organizations exempt under Section 501(c) or (d)] the application filed by the organization with respect to which the Secretary made his determination that such organization was entitled to exemption . . . , *together with any papers submitted in support of such application or notice, and any letter or other document issued by the Internal Revenue Service with respect to such application or notice* shall be open to public inspection at the national office of the Internal Revenue Service.

I.R.C. § 6104(a)(1)(A) (emphasis added).  By contrast, Section 6103 explicitly protects the confidentiality of such tax return information as closing agreements, so long as the return information is not subject to disclosure under Section 6104.  *Tax Analysts I*, 214 F.3d at 183 (characterizing Section 6104 as "an exception to the exception from the general disclosure rule offered by FOIA Exemption 3 and I.R.C. § 6103").  This Court

has already held that the fact that Section 6103 is a statute "contemplated by FOIA Exemption 3 is beyond dispute." *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997).

The U.S. Department of the Treasury ("Treasury") implemented Section 6104 with Treasury Regulation section 301.6104(a)-1, 26 C.F.R. § 301.6104(a)-1. Section (a) of this rule essentially mirrors the statutory provision. Section (b) defines "[l]etters or documents issued by the Internal Revenue Service with respect to an application for tax exemption." Section (c) notes that no such documents will be made public until the applicant "is determined, on the basis of the application, to be exempt from taxation for any taxable year." Section (d) defines "application for tax exemption." And section (e) defines "supporting documents":

> Supporting documents defined. For purposes of this section, "supporting documents", as used with respect to an application for tax exemption, means *any statement or document not described in paragraph (d) of this section that is submitted by an organization in support of its application.* For example, a legal brief submitted in support of an application for tax exemption is a supporting document.

Treas. Reg. § 301.6104(a)-1(e) (emphasis added).

Finally, section (i) of the rule provides that certain documents are *never* subject to Section 6104 disclosure, even when they relate to tax-exempt organizations. This list includes "[u]nfavorable rulings or determination letters . . . issued in response to applications for tax exemption," Treas. Reg. § 301.6401(a)-1(i)(1), and "[a]ny other letter or document filed with or issued by the Internal Revenue Service which, although it relates to an organization's tax exempt status as an

organization described in section 501(c) or (d), does not relate to that organization's application for tax exemption, within the meaning of paragraph (d)." *Id.* § 301.6401(a)-1(i)(6).

Tax returns and return information remain confidential except where provided to the contrary. I.R.C. § 6103(a). Closing agreements contain such information, but it is at least theoretically possible that they may contain information subject to disclosure under Section 6104(a)(1)(A). We identified this intersection of the two sections in the previous appeal in this case, but noted that the parties agreed on that reading of the law and only disputed whether *the* closing agreement was subject to disclosure. *Tax Analysts I*, 214 F.3d at 184-85.

### C. *The First Round of Litigation*: *Trial and Appeal*

The District Court did not examine any of the documents in question before dismissing TA's complaint. The court concluded from the pleadings that requested information represented a closing agreement under I.R.C. § 7121(a), and was therefore a tax return exempt from disclosure under Section 6103 and FOIA Exemption 3. It granted judgment under FED. R. CIV. P. 12(c). The court also concluded that Section 6104 provides no private right of action against a tax-exemption applicant, and dismissed the claim against CBN under FED. R. CIV. P. 12(b)(6).

This Court affirmed the Rule 12(b)(6) dismissal of the claim against CBN, *Tax Analysts I*, 214 F.3d at 186, but vacated the 12(c) dismissal and remanded, holding that Section 6103 does *not* exclude all closing agreements and their documentary precursors. Instead, that provision only excludes those agreements which are not "*any* papers submitted" or "*any* letter or document issued" subject to public disclosure under Section 6104(a)(1)(A). 214 F.3d at 184-85 (emphasis added by the

Court). We concluded this analysis with the following instruction for the District Court on remand:

> At bottom, the case before us does not present a disagreement over the law to be applied, but the narrow and fact-specific question of whether the closing agreement between the IRS and CBN and any accompanying documentation represent material disclosable under I.R.C. § 6104(a)(1)(A), despite their apparent status as material exempt from disclosure under I.R.C. § 6103. *As the present record is inadequate for such determination, further discovery is necessary.* We therefore vacate the district court's judgment in favor of the IRS and remand for further proceedings consistent with this opinion. *We leave to the district court in the first instance the question of whether* in camera *examination or the filing of a* Vaughn *index is sufficient to create an adequate record upon which to base the disclosability determination.*

214 F.3d at 185 (emphasis added).

### D. *On Remand*

On remand, the IRS filed a motion for summary judgment, accompanied by a statement of material facts with attached declarations. One of the declarants was Steven Miller, then-Director of Exempt Organizations in the IRS's Tax Exempt and Government Entities Operating Division. Miller had been involved in the CBN-IRS negotiations. On inspection of 13 boxes of documents relevant to the matter, he stated that the boxes contained memos and correspondence on resolution of CBN's past returns. The other declarant, Sanford Ayers, Executive Assistant to Miller, was familiar with 19 more boxes and a file cabinet of materials, all related to the past returns. According to Miller, discussions regarding the tax-exempt status

going forward involved no documents in connection with CBN's February 1998 tax-exemption application and the materials supporting that application. As such, all documents required to be disclosed had already been disclosed.

TA opposed the motion, disputing some of the allegations of fact and requesting discovery. The District Court granted TA discovery in the form of deposition testimony. But the court limited questioning regarding the "substance" of materials so as to not "go beyond what would be disclosed by a Vaughn affidavit." Miller was deposed, and identified documents that were dated after August 1996, the time at which the subject of the new tax exemption had been raised. TA requested that the IRS produce those documents. Instead, on July 20, 2001, the IRS submitted a *Vaughn* Index describing the documents at issue and explaining the reasons why each document was not disclosable. The documents were as follows:

    i.    A draft application for tax-exempt status ("TES");

    ii.    A March 6, 1997 letter from CBN to the IRS enclosing a draft closing agreement;

    iii.    A Form 1023 Application for TES, submitted April 15, 1997;

    iv.    An August 12, 1997 letter from Miller to CBN regarding issues arising from the April 1997 TES application;

    v.    An October 3, 1997 letter from CBN to the IRS with draft responses to the August 1997 letter;

    vi.    A November 10, 1997 letter from CBN withdrawing the April 1997 application; and

> vii. A November 17, 1997 letter from CBN responding to the August 1997 letter.

JA 174-83.  Later, the IRS filed a supplemental *Vaughn* Index identifying one more document:

> viii. A February 21, 1997 letter from CBN's counsel to the IRS with three attachments: two draft closing agreements, and a list of related issues.

JA 197.  TA filed a motion to compel Miller to answer more questions; the District Court denied this motion and scheduled a status hearing.  The Court conducted an *in camera* review of the closing agreement.

On February 25, 2004, the District Court granted the Service's motion for summary judgment.  *Tax Analysts v. IRS*, No. 98-2345 (D.D.C. Feb. 25, 2004) ("Memo Op."), *reprinted at* JA 260.  The Court held in its memorandum opinion that the documents were not submitted "with, or in support of, [CBN's] application for tax exempt status."  Memo Op. at 1.  The closing agreement itself, viewed by the Court, made "only passing reference to the [CBN] application for tax exempt status," and that reference indicated that the application had "already been approved."  Memo Op. at 3.  Because the closing agreement was not "submitted with, or in support of, CBN's application for tax exempt status," it was not subject to disclosure under I.R.C. § 6104(a)(1)(A).  *Id.*

The Court then amended its decision so as to also grant summary judgment for the IRS on all claims regarding the eight *Vaughn* Index documents, on the same grounds.  *Tax Analysts v. IRS*, No. 98-2345 (D.D.C. Aug. 19, 2004), *reprinted at* JA 271-72.  TA timely filed this appeal.

## II. Analysis

### A.

The standard governing a grant of summary judgment in favor of an agency that claims it has fully discharged its FOIA disclosure obligations is well established. . . . The agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact. . . . We review the issue *de novo* on the district court record.

*Lopez v. DOJ*, 393 F.3d 1345, 1348-49 (D.C. Cir. 2005) (quoting *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994)). This Court reviews the District Court's discovery rulings for abuse of discretion. *Stewart v. Evans*, 351 F.3d 1239, 1245 (D.C. Cir. 2003).

### B.

In remanding this matter to the District Court for it to develop further the record on which it was to determine whether the materials requested were subject to Section 6104 disclosure, we provided instructions for the means by which the court was to construct such a record: "We leave to the district court in the first instance the question of whether *in camera* examination or the filing of a *Vaughn* index is sufficient to create an adequate record upon which to base the disclosability determination." 214 F.3d at 185. The District Court has done no less.

As described above, the court allowed the IRS to avoid voluminous *Vaughn* Index submissions by relying on a mix of deposition testimony, declarations, a *Vaughn* Index, and *in camera* review to identify and evaluate documents possibly implicated by Tax Analysts's disclosure requests. The District

Court did not abuse its discretion in adopting this approach. *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 315 (D.C. Cir. 1988) (holding that agency affidavits carried agency's burden of proof under FOIA); *Mapother v. DOJ*, 3 F.3d 1533, 1539-40 (D.C. Cir. 1993) (relying on *in camera* review of documents to determine that information was subject to FOIA disclosure). Indeed, we suggested such a process in the first appeal. 214 F.3d at 185.

Tax Analysts argues that because this Court remanded the proceedings for "some review of the content of the documents in question," *id.*, the District Court erred by not requiring the Service to respond to Tax Analysts's inquiries into the content of various documents. Br. for Appellants at 36 (citing Depo. of Miller, *reprinted at* JA 204-22). Therefore, they argue, the District Court's judgment violated the express order of this Court.

But Tax Analysts reads this Court's holding too broadly: in remanding the matter for "some review of the content," we did not require that the IRS provide disclosure in excess of that which would have been provided in a full *Vaughn* Index of all of the documents. The inquiry into the content of the documents need only look deeply enough to satisfy the requirements of *Vaughn* and its progeny: that is, to

> force[] the government to analyze carefully any material withheld, [to] enable[] the trial court to fulfill its duty of ruling on the applicability of the exemption, and [to] enable[] the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Keys v. DOJ*, 830 F.2d 337, 349 (D.C. Cir. 1987) (collecting cases and quoting *Lykins v. DOJ*, 725 F.2d 1455, 1463 (D.C. Cir. 1984)).

This Court's instructions are fulfilled if the District Court's inquiry into the documents is sufficient to demonstrate that the Service rightfully withheld the documents from Tax Analysts. As we describe in the following discussion, it has served that purpose.

C.

Section 6104 of the Internal Revenue Code requires the Service to disclose "the application filed by the organization with respect to which the Secretary made his determination" regarding CBN's tax-exempt status and those documents which were "submitted in support of such application or notice" or which were "issued by the Internal Revenue Service with respect to such application." I.R.C. § 6104(a)(1)(A).

The parties disagree over whether the Code's reference to the "application" for tax-exempt status necessarily incorporates all prior applications that precede the particular application submission that is accepted by the Service. Tax Analysts argues that "earlier submissions of CBN's application" – in this case, a draft application and a withdrawn application – were "part of the negotiation of the terms of the final application that IRS would grant," Br. for Appellants at 45-46, and as such are subject to disclosure as documents submitted in support of the successful application.

The IRS argues that, according to "longstanding policy," documents are disclosable "if they were actually submitted with or in support of a successful application for tax-exempt status, but not if they were merely exchanged in an informal process

leading up to the successful application and not included with the application itself." Br. for IRS at 39; *see also* Decl. of Miller at 9-10 (Jan. 4, 2001) (describing Service practice).

In support of this argument, the Service points to Treasury Regulations section 301.6104(a)-1(e) and -1(i)(6). Neither of those specifically defines as documents submitted "in support of" an application only those documents submitted with an application or submitted for the purpose of promoting a specific application and only that application, though each is certainly consistent with that interpretation. Those sections of the regulations read as follows:

(e) Supporting documents defined. For purposes of this section, "supporting documents", as used with respect to an application for tax exemption, means any statement or document not described in paragraph (d) of this section that is submitted by an organization in support of its application. For example, a legal brief submitted in support of an application for tax exemption is a supporting document.

\* \* \*

(i) Material not open to public inspection under section 6104 or 6110.

\* \* \*

(6) Any other letter or document filed with or issued by the Internal Revenue Service which, although it relates to an organization's tax exempt status as an organization described in section 501(c) or (d), does not relate to that organization's application for tax exemption, within the meaning of

paragraph (d).

Treas. Reg. § 301.6104(a)-1. While these sections of the Treasury Regulations are indeed consistent with a Service policy that deems disclosable those documents that "were actually submitted with or in support of a successful application for tax-exempt status, but not . . . merely exchanged in an informal process leading up to the successful application and not included with the application itself," such a policy is not *commanded* by the regulations. By formulating the policy in terms of documents "actually" submitted in support of the application, to the exclusion of document submitted "in an informal process leading up to the successful application and not included with the application itself," the Service imputes a definition to the regulation that is not compelled by the text of the regulation.

That said, because this is the agency's interpretation of its own regulation, we grant the agency great deference: "under well-recognized precedent, we can reject the Secretary's interpretation only if 'it is plainly erroneous or inconsistent with the regulation.'" *Sec'y of Labor v. Ohio Valley Coal Co.*, 359 F.3d 531, 534-35 (D.C. Cir. 2004) (quoting *Akzo Nobel Salt, Inc. v. FMSHRC*, 212 F.3d 1301, 1303 (D.C. Cir. 2000)). The proffered interpretation is neither inconsistent with the text nor plainly erroneous. We readily defer to the agency.

Turning now to the nine documents at issue – to wit, the final closing agreement and the eight other documents enumerated at pages 8-9 above – we agree with the District Court that the Service has met its burden to demonstrate that each of the documents is exempt from disclosure under Section 6104. The Miller Declaration provided an exhaustive list of the documents that comprised either "the application itself" and the supporting "attachments" or the documents issued by the Service with respect to CBN's application. Miller Decl. ¶ 19,

*reprinted at* JA 79-81. The eight controverted documents for which the Service provided a *Vaughn* Index were not among these documents, and as such they do not constitute documents submitted in support of the successful application or documents issued by the Service with regard to the successful application. As for the closing agreement itself, the District Court found upon *in camera* review that "it makes only passing reference to the application for tax exempt status as having already been approved," and as such it does not constitute a document submitted in support of the application. Memo Op. at 3, *reprinted at* JA 262. In sum, the Service has met its burden.

## D.

Tax Analysts's demand for further inquiry into the substance of the documents would, if granted, turn FOIA on its head, awarding Appellant in discovery the very remedy for which it seeks to prevail in the suit. The courts must not grant FOIA plaintiffs discovery that would be "tantamount to granting the final relief sought." *Military Audit Project v. Casey*, 656 F.2d 724, 734 (D.C. Cir. 1981). *Cf. Cheney v. United States Dist. Court*, 124 S.Ct. 2576, 2591 (2004) (describing as "anything but appropriate" those discovery requests which "provide respondents all the disclosure to which they would be entitled in the event they prevail on the merits, and much more besides"). Under the limited requirements of FOIA and Sections 6103 and 6104 of the Internal Revenue Code, the IRS has met its burden, and we therefore affirm the District Court's grant of summary judgment.