**TAX ANALYSTS, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

No. CV. NO. 94–2220(TFH).

United States District Court, District of Columbia.

March 16, 1999.

**450**

William Aaron Dobrovir, Warrenton, VA, for plaintiff.

Margaret Mary Elizabeth Earnest, Jonathan Jackel, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## MEMORANDUM OPINION

HOGAN, District Judge.

Pending before the Court are Plaintiff's and Defendant's Cross–Motions for Summary Judgment. The issue before the Court is whether the plaintiff, Tax Analysts ("TA"), is entitled to enjoin the Internal Revenue Service ("IRS" or "Defendant") from withholding documents requested under the Freedom of Information Act (FOIA). Upon consideration of the parties' pleadings and statements at oral argument, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

### I.

TA is a nonprofit corporation organized under the laws of the District of Columbia. TA's primary activities include publishing a variety of tax publications and disseminating tax information to the general public.[1] In pursuing these objectives, TA argues for the public availability of documents and materials relating to the administration of the tax laws by all United States agencies. On November 10, 1993, pursuant to FOIA, TA requested from the IRS copies of all "closing agreements"[2] relating to organizations exempt from federal income tax executed on or after December 31, 1992.

After the IRS failed to respond to TA's initial request, TA filed an administrative appeal based upon the constructive denial of its claim. The IRS denied TA's appeal, claiming that disclosure of the closing agreements was prohibited by 26 U.S.C. § 6103(a). TA then brought this FOIA claim before this Court, seeking an injunction to compel the IRS to produce for inspection and copying all of the previously requested closing agreements. Both TA and the IRS have moved for summary judgment pursuant to Fed.R.Civ.P. 56(c).

### II.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is a genuine issue of material fact only if there is such evidence that a reasonable jury could return a verdict for the non-

---

**1.** Specifically, TA disseminates IRS, Treasury and Congressional documents and hearing transcripts.

**2.** Pursuant to 26 U.S.C. § 7121, the Treasury Secretary is authorized to enter into agreements with any individual relating to the individual's liability in respect to any IRS tax for any taxable period. 26 U.S.C. § 7121. Such closing agreements may serve one of several functions. *See* Miller Decl. ¶ 5; Ex. B. First, a closing agreement may determine the amount of a taxpayer's liability for a given tax period. *See id.* Second, a closing agreement may resolve an issue that has had tax implications over a several year period. *See id.* Finally, a closing agreement may be a combina-

tion of the above-mentioned functions. *See id.*

These agreements are conclusive and matters contained within such agreements may not be reconsidered without a showing of fraud, malfeasance, or a misstatement of material fact. *See id.; see also* 26 U.S.C. § 7121(b). Although agreements generally set out the terms of the negotiated settlement between the taxpayer and the IRS, they are not intended to provide analysis, interpret the law, or apply the law to a particular set of facts. *See id.* In the instant case, TA seeks disclosure of six closing agreements from the IRS, five of which involve final determinations and one of which is a combined agreement

moving party; a fact is material only if it might affect the outcome of the suit under applicable law. *See id.* at 248, 106 S.Ct. 2505.

## III.

■ Tax returns and return information are generally not subject to public disclosure. *See* I.R.C. § 6103(a). In the case of tax-exempt organizations, however, Congress has provided a limited exception to § 6103's confidentiality rule. *See* I.R.C. § 6104(a)(1)(A). Section 6104(a)(1)(A) provides:

> If an organization described in section 501(c) or (d) is exempt from taxation under section 501(a) for any taxable year, the application filed by the organization with respect to which the Secretary made his determination that such organization was entitled to exemption under section 501(a), together with any paper submitted in support of such application, and any other letter or document **issued** by the IRS **with respect to such application** shall be open to public inspection.

*Id.* (emphasis added). The Treasury regulation interpreting § 6104(a)(1)(A) takes the words "any papers submitted in support of such application" to mean "any statement or document . . . that is submitted by an organization in support of its application." *See* 26 C.F.R. § 301.6104(a)–1(e). Thus, as the D.C. Circuit noted in *Lehrfeld v. Richardson,* papers submitted by "anyone other than the applicant itself in support of its application for tax-exempt status need not be disclosed." 132 F.3d 1463, 1464 (D.C.Cir.1998).

■ Plaintiff's claim arises under the FOIA, 5 U.S.C. § 552, which provides a rule of general disclosure by government agencies upon request. Mandatory disclosure enables the public to gain access to government information so that it can review the government's performance of its statutory duties, thereby promoting government honesty. *See EPA v. Mink,* 410 U.S. 73, 79–80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Accordingly, district courts have the authority to enjoin an agency from withholding agency records and to order the production of agency records where the agency improperly withholds them.[3] *See United States Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 141, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). However, an agency may withhold agency records which fall under one of the nine enumerated exemptions to the FOIA. *See* 5 U.S.C. § 552(b). The government has the burden to justify its withholding of documents pursuant to one or more of these exemptions. *See Katz v. National Archives & Records Admin.,* 862 F.Supp. 476, 478 (D.D.C.1994).

In this case, Defendant, a government agency, invoked the FOIA exception set forth in 5 U.S.C § 552(b)(3). Section 552(b)(3) states that an agency need not disclose records specifically exempted from disclosure by statute, provided that such statute (1) requires withholding information from the public in "such a manner as to leave no discretion on the issue," or (2) establishes particular criteria for withholding or refers to particular types of matters to be withheld. *See* 5 U.S.C. § 552(b)(3). Defendant asserts that I.R.C. § 6103(a), which governs confidentiality and disclosure of returns and return information, bars Plaintiff's FOIA claim. Thus, two matters are before the Court. First, whether the closing agreements contain return information under § 6103. If they contain return information, then § 6103 generally bars their disclosure.[4] Second,

---

**3.** Section 552(a)(4)(B) confers jurisdiction upon the district court and allows for a *de novo* determination.

**4.** It is clear that § 6103 fits within FOIA exemption 3. *See Lehrfeld v. Richardson,* 132 F.3d 1463, 1466 (D.C.Cir.1998) *citing Tax Analysts v. IRS,* 117 F.3d 607, 611 (D.C.Cir. 1997) ("That § 6103 is the sort of nondisclosure statute contemplated by FOIA exemption 3 is beyond dispute").

**452**

whether the closing agreements requested by Plaintiff are "issued" by the IRS "with respect to [an] application [for tax-exempt status]." *See* 26 U.S.C. § 6104(a)(1)(A). If § 6104 applies, the documents are exempt from § 6103's non-disclosure rule and must be disclosed under FOIA.

■ Section 6103 broadly defines "return information" to encompass:

"a taxpayer's identity, the nature, source or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld deficiencies, over-assessments or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability ... of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense ..."

I.R.C. § 6103(b)(2)(A). A closing agreement is "an agreement in writing with any person relating to the liability of such person ... in respect of any internal revenue tax for a taxable period." I.R.S. § 7121. Thus, as closing agreements contain "determination[s] of the existence ... of liability," the agreements constitute "return

information" within the meaning of § 6103(b)(2)(A). *See id.* § 6103(b)(2)(A).[5]

TA asserts that the closing agreements are nevertheless subject to public disclosure under § 6104 because they were "issued" by the IRS "with respect to" the organizations' applications for exempt status. *See id.* § 6104. Treasury Regulation § 301.6104(a)–1(b) provides that, for purposes of I.R.C. § 6104, the term "issued" is to be interpreted in accordance with the rules set forth in T.Reg. § 301.6110–2(h). Section 301.6110–2(h) states in pertinent part: "Issuance of a written determination occurs ... upon the mailing of the ruling or determination letter to the person whom it pertains. Issuance of a technical advice memorandum occurs upon the adoption of the technical advice memorandum by the district director." T.Reg. 310.61110–2(h).

■ Plaintiff contends that, under the above definition of "issue," the closing agreements were issued either when they were mailed back to the exempt organization or adopted by the IRS. The IRS, however, argues that in order for a document to be issued by the IRS, the document has to be created unilaterally by the Service. Consequently, the IRS asserts that because a closing agreement is a bilateral agreement signed by both the service and the taxpayer, such an agreement is not issued by the IRS.

---

**5.** TA also argues that even if the closing agreements contain some privileged "return information," FOIA compels the segregation of non-privileged information from confidential information ·contained within the agreements, thus subjecting at least some of the information to public disclosure. TA relies on the Supreme Court's decision in *Church of Scientology v. Internal Revenue Service*, 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987), to support this argument. The *Church of Scientology* case focused on the statutory language of § 6103(b)(2), formerly known as the Haskell Amendment, which provides that "return information" does not include "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." *Id.* at 12, 108 S.Ct. 271

*citing* I.R.C. § 6103(b)(2). The Supreme Court found that the scope and intent of the Haskell Amendment was confined to disclosures of statistical findings and compilations that do not identify a particular taxpayer. *See Church of Scientology*, 484 U.S. at 15–16, 108 S.Ct. 271. Thus, *Church of Scientology* does not allow disclosure of otherwise confidential return information simply by redacting identifying details. *See id.* at 16, 108 S.Ct. 271. Furthermore, the Court notes that even if the IRS was ordered to segregate non-privileged information from return information and disclose the former, the information disclosed would be negligible. Finally, TA has access to the non-privileged information through the IRS' administrative records, which are subject to public disclosure pursuant to § 6104.

The Court finds that the IRS's interpretation of the term "issued" is correct.[6] Pursuant to § 7121, a closing agreement is normally initiated by the taxpayer who drafts a proposal for the IRS to approve. *See* § 301.7121–1(a), (d)(1). The IRS is not issuing a document so much as it is reacting to a proposal. Thus, pursuant to the statutory language of the Internal Revenue Code, closing agreements are not "issued" by the IRS and consequently are not subject to public disclosure requirements.[7]

TA also advances a public policy argument for why the closing agreements should be subjected to disclosure. TA asserts that in exchange for vast public assistance, exempt organizations are required to disclose information pertinent to their exemption application process. This contention appears consistent with the IRS's own Internal Revenue Manual ("IRM"), which states:

> The intent of Congress in allowing for the public inspection of information governed by I.R.C. § 6104(a), (b), and (e) was to enable the public to scrutinize the activities of tax-exempt organizations and trusts. Congress intended that these organizations and trusts be subject to a certain degree of public accountability in view of their privileged tax status and because the public has a right to know for what purposes their contributions are being or will be used.

IRM—Administration, Disclosure of Official Information Return Handbook, Chapter 910(7).

Although the Court finds merit in TA's policy argument, the facts in the instant case foreclose the possibility of disclosure. Because the closing agreements appear to be products of negotiation rather than factors in granting tax-exempt status, the scope of the agreements are not broad enough to mandate disclosure under § 6104. While this result appears contrary to the broad public policy encouraging disclosure, it is for Congress, not the courts, to modify the IRS disclosure rules. Thus, because no issues of material fact are in dispute and resolving all issues in a light most favorable to Plaintiff, judgment must be granted to the IRS as a matter of law.

### III.

Both Plaintiff and Defendant have filed Motions for Summary Judgment concerning Plaintiff's desired access to documents from the IRS under the Freedom of Information Act. Because the closing agreements do not fall under the limited umbrella of § 6104, Defendant's Motion for Summary Judgment must be GRANTED and Plaintiff's Motion for Summary Judgment must be DENIED. An Order consistent with this Memorandum Opinion will issue this same day.

---

**6.** Although an argument can be made that the IRS's act of mailing the negotiated agreement to the taxpayer constitutes an issuance, this argument suffers when considering the character of the closing agreements themselves. The closing agreements in the instant case merely present a skeletal synopsis of the negotiated settlements and contain no legal analysis. Furthermore, under § 301.6104(a)–1(d)(1), these closing agreements do not appear to qualify as "documents and statements the [IRS] requires to be filed" with an application form. The closing agreements at issue appear to serve more as a summary of the prior negotiations bereft of any impact on the application for reinstatement of tax exempt status.

**7.** Because the Court has concluded that the closing agreements are not "issued" pursuant to § 6104, the Court need not address whether the closing agreements constitute applications for tax-exempt status.