**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4242-18T2

WILLIAM MARK SCOTT,

     Appellant,

v.

NJ HEALTH CARE FACILITIES
FINANCING AUTHORITY,

     Respondent,

and

DEBORAH HEART AND
LUNG CENTER,

     Intervenor-Respondent.

_____

Argued September 29, 2020 – Decided January 13, 2021

Before Judges Gooden Brown and DeAlmeida.

On appeal from the New Jersey Government Records Council, GRC Complaint No. 2015-256.

William Mark Scott, appellant, argued the cause pro se.

Alison Keating, Deputy Attorney General argued the cause for respondent New Jersey Health Care Facilities Financing Authority (Gurbir S. Grewal, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Alison Keating, Deputy Attorney General, on the brief).

Robert A. Mintz argued the cause for intervenor-respondent Deborah Heart and Lung Center (McCarter & English, LLP, attorneys; Robert A. Mintz of counsel and on the brief; James A. Kellar, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Government Records Council (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant William Mark Scott appeals from the April 30, 2019 final agency decision of respondent Government Records Council (GRC) denying his request under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, for the production of federal tax return information of respondent Deborah Heart and Lung Center (Deborah) in the possession of respondent New Jersey Health Care Facilities Financing Authority (HCFFA). We affirm.

I.

The following facts are derived from the record. In 1993, HCFFA, a public authority, issued tax-exempt conduit bonds (the Bonds) for the benefit of Deborah, a non-profit hospital. The proceeds of the Bonds were loaned to

2

Deborah, which used the funds to refinance an earlier issue of bonds and to pay for additions and renovations to its hospital facilities. The Bonds were payable solely from payments made by Deborah to HCFFA under a loan agreement. Deborah subsequently initiated a total return swap transaction to reduce its interest obligation on the Bonds. HCFFA was not a party to that secondary market transaction.

In 2010, the Internal Revenue Service (IRS) initiated an examination of the total return swap transaction and the impact, if any, it had on the federal tax treatment of interest on the Bonds. During the examination, HCFFA provided the IRS with copies of documents relating to the issuance of the Bonds. In addition, HCFFA became aware of the total return swap transaction, and solicited documents from Deborah related to that transaction, which it forwarded to the IRS. Because HCFFA was not a party to the total return swap transaction, all of the documents it provided to the IRS concerning the transaction came from Deborah. The IRS, Deborah, and HCFFA eventually executed a settlement agreement that brought the examination to a conclusion.

On July 30, 2015, Scott filed an OPRA request with the custodian of records for HCFFA for "[a]ll correspondence (including information document requests) and agreements between [HCFFA] and the [IRS] concerning an IRS

examination of, and negotiation or settlement of the examination dispute relating to" the Bonds.

On August 4, 2015, the HCFFA custodian of records denied Scott's request pursuant to N.J.S.A. 47:1A-9(a), which prohibits the disclosure of documents that are confidential under any other statute. The custodian determined that the requested information contained Deborah's federal tax return information protected from disclosure under 26 U.S.C.A. § 6103 (Section 6103).

On August 5, 2015, Scott filed a denial of access complaint with the GRC. He argued that the HCFFA custodian provided an insufficient explanation for the denial of his public records request. In addition, he argued that Section 6103 is not applicable to the records he requested because an IRS publication states that HCFFA is treated as the taxpayer for purposes of the examination of the Bonds. Thus, Scott argued, all correspondence between the IRS and HCFFA related to the examination, including documents obtained from Deborah, are the tax records of HCFFA, not of Deborah. Scott argued that Section 6103 does not prohibit HCFFA from disclosing its own tax records.

In addition, Scott argued that even if the requested records contain Deborah's federal tax return information, Section 6103 does not prohibit production of those records by HCFFA. According to Scott, Section 6103

prohibits disclosure of tax return information by three categories of persons, none of which is applicable to HCFFA and its employees.

Before the GRC, the HCFFA custodian compiled a list of records responsive to Scott's request and the basis for denying their production. Those records include legal documents related to the issuance of the Bonds, rebate reports, detailed responses to IRS inquiries, a certificate of non-arbitrage and other tax matters, lease agreements, the total return swap letter agreement and tender offer, redemption notices, IRS extension letters, and various confirmations, certificates, and letters relating to the total return swap transaction. HCFFA argued that despite it being considered the taxpayer by the IRS during the examination, the records Scott seeks are the de facto tax records of Deborah due to the conduit nature of the Bonds and role the authority played in the examination. In addition, HCFFA argued that the definition of tax return information in Section 6103 is broad and the prohibition on disclosure applies to it and its employees. Deborah moved to intervene before the GRC, seeking to make arguments that substantively parallel those of HCFFA.

On April 30, 2019, the GRC issued its final agency decision upholding HCFFA's denial of Scott's records request. As an initial matter, the GRC granted Deborah's motion to intervene. On Scott's substantive claims, the GRC found

that the HCFFA custodian provided a sufficient response to his request by citing the statutory basis for the denial of access. In addition, the GRC concluded that the HCFFA custodian did not unlawfully deny Scott access to the records he requested because those records contained Deborah's tax return information within the meaning of Section 6103, which applied to HCFFA and its employees. Thus, the GRC concluded, production of those records was properly denied under N.J.S.A. 47:1A-9(a).

This appeal follows. Scott raises the following arguments.

POINT I

A DE NOVO STANDARD OF REVIEW APPLIES.

POINT II

THE GOVERNMENT RECORD[S] COUN[CIL'S] DETERMINATION IS PROFOUNDLY WRONG.

POINT III

COPIES OF RECORDS SENT TO THE I.R.S. ARE NOT RETURNS OR RETURN INFORMATION.

POINT IV

THE CUSTODIAN MAY DISCLOSE RECORDS THE AUTHORITY RECEIVED FROM THE I.R.S.

POINT V

DISCLOSURE IS NOT SUBJECT TO A QUALIFIED
PRIVILEGE.

II.

Our review of an administrative agency's final decision is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). "We will not reverse an agency's judgment unless we find the decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Id. at 202 (quoting Stallworth, 208 N.J. at 194). However, "determinations about the applicability of OPRA and its exemptions are legal conclusions" subject to de novo review. In re N.J. Firemen's Ass'n, 230 N.J. 258, 273-74 (2017) (citing O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379 (App. Div. 2009); Asbury Park Press v. Cty. of Monmouth, 406 N.J. Super. 1, 6 (App. Div. 2009), aff'd o.b., 201 N.J. 5 (2010)). "As always, our primary 'objective [in] statutory interpretation is to discern and effectuate the intent of the Legislature.'" Id. at 274 (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)).

"The purpose of OPRA is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils

inherent in a secluded process." O'Shea, 410 N.J. Super. at 379 (quoting Times of Trenton Publ'g Corp. v. Lafayette Yard Community Dev. Corp., 183 N.J. 519, 535 (2005) (internal quotations omitted)). Accordingly, the statute provides that "government records shall be readily accessible for inspection, copying, or examination . . . with certain exceptions, for the protection of the public interest . . . ." N.J.S.A. 47:1A-1.

The present appeal turns on the parameters of one of the statutory exceptions. A "[g]overnment record" includes

> any paper . . . document . . . data processed or image processed document, information stored or maintained electronically . . . or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer . . . agency or authority of the State . . . or that has been received in the course of his or its official business by such officer . . . agency, or authority . . . .
>
> [N.J.S.A. 47:1A-1.1.]

However, N.J.S.A. 47:1A-9(a) provides that OPRA "shall not abrogate any exemption of a public record or government record from public access heretofore made pursuant to . . . any federal law . . . ."

Section 6103, a federal law, provides in relevant part that

> (a) . . . Returns and return information shall be confidential, and except as authorized by this title –

. . . .

(2)     no officer or employee of any State, any local law enforcement agency receiving information under section (i)(1)(C) or (7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who had or had access to returns or return information under this section or section 6104 (c) . . .

. . . .

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise under this provision of this section.

[26 U.S.C.A. § 6103(a).]

"Return information" is defined broadly as

(A)     a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . .

. . . .

(D)   any agreement under section 7121, or any similar agreement, and any background information related to such an agreement or request for such an agreement.

[26 U.S.C.A. § 6103(b)(2).]

Section 7121 is titled "Closing agreements" which are defined as "agreement[s] in writing with any person relating to the liability of such person . . . in respect of any internal revenue tax for any taxable period."  26 U.S.C.A. § 7121(a).

Scott disputes that the information he requested falls within the broad definition of return information under Section 6103, an argument he did not raise before the GRC.  In addition, he reiterates his argument that: (1) if the information he requests is return information, it is the return information of HCFFA, not Deborah; and (2) alternatively, if information he requests is the return information of Deborah, Section 6103 does not preclude HCFFA from disclosing that information.

Having carefully reviewed the record in light of the unequivocal language of Section 6103, we conclude that Scott's arguments are without merit.  We briefly address his arguments in turn.

"'[R]eturn information' is defined broadly by the statute to include almost any information compiled by the IRS in connection with its determination of a taxpayer's liability."  Lehrfeld v. Richardson, 954 F. Supp. 9, 13 (D.D.C. 1996).

For example, the "broad definition . . . is sufficient to include documents produced during an initial IRS investigation of an organization seeking tax-exempt status." Ibid. See also Church of Scientology of Cal. v. IRS, 484 U.S. 9, 14 (1987) ("[A]s a practical matter, 'return information' might include the report of an audit examination, internal IRS correspondence concerning a taxpayer's claim, or a notice of deficiency by the IRS . . . ."); Belisle v. Comm'r, 462 F. Supp. 460, 462 (W.D. Okla. 1978) (holding that IRS investigation results of a tax-exempt corporation were confidential under Section 6103); Tax Analysts v. IRS, 53 F. Supp. 2d 449 (D.D.C. 1999) (holding that closing agreements constitute "return information" not subject to disclosure).

The information Scott seeks was exchanged between HCFFA and the IRS during an examination of whether the total return swap transaction had an impact on the tax-exempt status of interest paid pursuant to the Bonds. This information is "data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to . . . the determination of the existence, or possible existence, of liability . . . of any person . . . for any tax," 26 U.S.C.A. § 6103, and falls within the broad scope of the statute. The same is true for the closing agreement that the IRS, HCFFA, and Deborah ultimately executed to conclude the examination, which is protected from disclosure by Section 6103, as is the

"background information related to such an agreement or request for such an agreement . . . ." 26 U.S.C.A. § 6103(b)(2)(D). Scott's cabined interpretation of Section 6103 does not comport with its unequivocal terms or the evident intention of Congress to provide broad protection to taxpayers who produce information to the IRS to facilitate that agency's determination of tax liabilities and to the background information those taxpayers retain after an IRS examination that resulted in a closing agreement.[1]

Nor do we agree with Scott's argument that because HCFFA is considered the taxpayer by the IRS during its examination of the tax-exempt status of the Bonds all of the information HCFFA received from Deborah and forwarded to the IRS is transformed into HCFFA's return information. Because HCFFA was the entity that issued the Bonds the IRS considered it responsible for obtaining the necessary information from Deborah, which was a party to the total return swap transaction, to determine whether the tax-exempt status of the Bonds had

---

[1] We acknowledge Deborah's argument that we should not consider Scott's contention that the information he requested is not return information because he failed to raise that argument before the GRC. See N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010) ("We have often stated that issues not raised below will ordinarily not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest."). Given that the Legislature has recognized the public interest in access to government records, we address Scott's argument to provide a complete analysis of whether the information he requests is exempt from disclosure.

been altered by that transaction. Scott cites no legal authority, and we can find none, holding that HCFFA's role as a conduit to the IRS for Deborah's return information converted Deborah's return information into the return information of HCFFA. There is no evident argument that such an interpretation of Section 6103 would advance the public policy of encouraging the production of documents containing tax information by entities whose financial transactions are examined by the IRS. To the contrary, such an interpretation of Section 6103 would impede cooperation among the issuers of government bonds and the beneficiaries of those instruments during an IRS examination.

In support of his argument, Scott relies on a IRS publication that states that "[t]he issuer of the municipal debt is treated as the 'taxpayer' throughout the examination process." As a threshold matter, the publication appears to apply to municipal debt. HCFFA is not a municipality, but a State authority. Scott does not address this discrepancy or cite to legal authority for the proposition that debt issued by a State authority is considered municipal debt by the IRS. Even if we were to assume that the Bonds are considered municipal debt for purposes of the publication, Scott cites to no legal precedent supporting the notion that the IRS can abrogate the statutory protection afforded to Deborah in

Section 6103 through issuance of a publication that, in effect, transforms Deborah's tax return information into HCFFA's tax return information.

Nor would an erosion of the protections afforded by Section 6103 in this fashion comport with the statute's overall structure. The IRS examination of the total return swap transaction was directed at Deborah, which participated in the transaction, and not HCFFA, which was unaware of the transaction until after the examination commenced. The documents at issue, which were obtained from Deborah's files, contain Deborah's tax information and the details of its financial transaction, not the sensitive information of the HCFFA. The protections provided by Section 6103 would be considerably weakened if the IRS could abrogate the statute's confidentiality protections merely by requiring a third party tangentially related to a financial transaction to collect and forward information from other taxpayers involved in the transaction. We do not see in Section 6103 any provision suggesting the confidentiality of a taxpayer's return information is subject to such ready abrogation by the IRS.

Finally, we disagree with Scott's strained interpretation of Section 6103's applicability to HCFFA and its employees. The statute plainly provides that "no officer or employee of any State . . . shall disclose any . . . return information obtained by him in any manner in connection with his service as such an officer

or an employee or otherwise under the provisions of this section." 26 U.S.C.A. §6103(a)(2). To advance his narrow interpretation of Section 6103, Scott relies on provisions of the statute that apply to officers and employees of local law enforcement agencies, local child support enforcement agencies, and local agencies administering certain federal programs. It is evident that those provisions do not apply to HCFFA or it employees or comport with the statute's overall purpose of providing protection to taxpayers.

To the extent we have not specifically addressed any of Scott's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4242-18T2